# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CARLLYNN NICHOLS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:22-cv-00016<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This case arises from a class-wide breach of contract by State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm promises its automobile policyholders in Ohio that if State Farm declares their covered vehicle a "total loss," State Farm will pay the policyholder the pre-accident "actual cash value" of the vehicle, less any applicable deductible. State Farm systematically breaches that promise, however, by applying improper "typical negotiation" deductions in valuing its insureds' total loss vehicles, resulting in the policyholders receiving lower payments from State Farm than they are due under Ohio law and under their policies with State Farm.

2. In perpetrating this systemic breach, State Farm uses something called an Autosource valuation report that *starts* by looking to the price of comparable motor vehicles in the local area. The problem: the valuation report then systematically *deducts* an improper and arbitrary sum from the advertised price for each identified comparable vehicle, purportedly to account for "typical negotiation." Because that deduction is not a legitimate component of actual cash value, State Farm breached its duties under the contract. The "typical negotiation" deduction is

improper under, and violates, Ohio law governing the valuation of total loss vehicles, which law is incorporated as a statutory floor into State Farm's insurance contracts in Ohio.

3. The typical negotiation deduction is not based on objective or verifiable information, nor does it have any discernible connection to realities of the marketplace; rather, it reflects arbitrary speculation that a vehicle will be sold for hundreds or even thousands of dollars below its asking price. And because the typical negotiation deduction is inherently subjective, neither a court nor an appraiser—much less an individual policyholder—is capable of determining the "correct" amount of such a deduction. The deduction is categorically unlawful in *any* amount.

4. Plaintiff Carllynn Nichols is a State Farm policyholder. After Nichols's car was totaled, State Farm improperly applied a typical negotiation deduction that deprived her of hundreds of dollars she was due under her State Farm auto policy. Now, she seeks damages and equitable relief on behalf of herself and all others similarly situated.

## PARTIES

5. Plaintiff Carllynn Nichols is (and at all relevant times was) a resident of Columbus, Ohio.

6. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") is an Illinois corporation headquartered in Bloomington, Illinois.

## JURISDICTION AND VENUE

7. Nichols and State Farm are citizens of different states. Further, the amount-in-controversy exceeds $75,000 because, on information and belief, the Class includes hundreds of thousands of individuals, and State Farm improperly deducted hundreds or even thousands of dollars from each class member's total loss

settlement. Therefore, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

8. Jurisdiction is also proper under 28 U.S.C. § 1332(d), because at least one member of the proposed Class is a citizen of a state different from that of State Farm; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 class members, and none of the exceptions under the subsection apply to this action.

9. A substantial part of the events and omissions giving rise to the claim took place in this District; specifically, State Farm entered and then breached its contract with Nichols and numerous other members of the proposed Class, in this district. Venue is thus proper under 28 U.S.C. § 1391(b)(2).

10. State Farm is subject to this Court's personal jurisdiction because: (1) State Farm purposefully availed itself of Ohio law by intentionally contracting with Ohio residents and systematically serving the Ohio insurance market; and (2) the claims in this action arise directly from, and are closely related to, State Farm's contacts with Ohio.

## FACTUAL ALLEGATIONS

11. On or about January 12, 2015, Nichols purchased an automobile insurance policy from State Farm for her 2004 Chevrolet Suburban. A copy of that policy and declarations page is attached as **Exhibit A** hereto.

12. Under the terms of State Farm's automobile insurance policies, with Nichols and the proposed Class, when a policyholder files a claim for loss caused to a covered vehicle, the contract gives State Farm the option to either: (a) pay the cost to repair the vehicle; (b) pay the vehicle's (pre-accident) "actual cash value," less any applicable deductible. Ex. A at 17–18, 21–22.

13. If State Farm determines that a vehicle is a "total loss"—meaning that the cost of repairs would exceed the vehicle's value—it then pays the actual cash value of the vehicle, less any applicable deductible.

14. The term "actual cash value" is not defined in the contract.

15. Nichols's State Farm automobile insurance policy is a form contract drafted and utilized by State Farm and its terms are materially identical to the policies of the absent class members.

16. On or about February 17, 2021, Nichols was involved in a car accident while driving her 2004 Suburban insured by State Farm, and she soon after that filed a claim under her State Farm policy.

17. State Farm determined that Nichols's 2004 Suburban was a covered vehicle and exercised its option under the policy to declare it a total loss.

18. To determine the actual cash value of Nichols's 2004 Suburban, State Farm used an Autosource valuation report prepared by Audatex, a third party that State Farm contracts with for this purpose. A copy of the valuation report is attached hereto as **Exhibit B**.

19. The valuation report states that it relies on "either asking or sold prices" for comparable vehicles to determine "the fair market value of the loss vehicle." Ex. B at 3.

20. In truth, however, Nichols's valuation was based on neither asking prices nor sold prices. Instead, the valuation report identifies the advertised price of four comparable vehicles, deducts a non-itemized sum for "typical negotiation," and then uses the so-reduced price, for each of the four comparable vehicles, to determine the value of Nichols's vehicle, as seen in the following image from the valuation report:

---

**Comparable Vehicle Details**

The following information provides the details for the vehicles used to calculate the Autosource Value. The selling price may be substantially less than the asking price. Where indicated, the asking price has been adjusted to account for typical negotiation according to each comparables price.

---

| | | | |
|---|---|---|---|
| 1 | 2004 Chevrolet Suburban K15 LT 4WD 4D Wagon | 3GNFK16Z54G145057 | $3,780 |

Stock# 46925A. 246900 Miles. 8 Cylinder 5.3 Engine, 4 Speed Automatic, LT Package, Anti-Lock Brakes, Automatic Dimming Mirror, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bose Sound System, Bucket Seats, Cruise Control, Chrome Bumper(s), Center & Rear Bench Seat, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Driver Information Sys, Dual Power Seats, Electronic Transfer Case, Fog Lights, Garage Door Opener, Heated Front Seats, AM/FM In-dash CD Changer, Intermittent Wipers, Keyless Entry System, Lighted Entry System, Leather Steering Wheel, Leather Seats, Overhead Console, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Power Adjustable Pedals, Roof/Luggage Rack, Rear Heater, Running Boards, Rear Seat Audio Controls, Rear Window Wiper/Washer, Side Airbags, Skid Plates, Strg Wheel Radio Control, Tachometer, Third Seat (trucks), Tinted Glass, Tilt Steering Wheel, Three Zone Climate Ctrl, Flex Fuel Option.

Offered for sale by Tom Tepe Autocenter in Milan, IN, (812) 654-3001. Vehicle information by Vast on 02/26/21.

The advertised price of $4,200 was adjusted to account for typical negotiation.

---

| | | | |
|---|---|---|---|
| 2 | 2004 Chevrolet Suburban K15 LT 4WD 4D Wagon | 1GNFK16Z44J206736 | $4,410 |

Stock# Z10498B. 210250 Miles. 8 Cylinder 5.3 Engine, 4 Speed Automatic, LT Package, Anti-Lock Brakes, Automatic Dimming Mirror, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bose Sound System, Bucket Seats, Cruise Control, Chrome Bumper(s), Center & Rear Bench Seat, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Driver Information Sys, Dual Power Seats, Electronic Transfer Case, Fog Lights, Garage Door Opener, Heated Front Seats, AM/FM In-dash CD Changer, Intermittent Wipers, Keyless Entry System, Lighted Entry System, Leather Steering Wheel, Leather Seats, Overhead Console, OnStar System, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Power Adjustable Pedals, Roof/Luggage Rack, Rear Heater, Running Boards, Rear Seat Audio Controls, Strg Wheel Radio Control, Tachometer, Third Seat (trucks), Tinted Glass, Tilt Steering Wheel, Three Zone Climate Ctrl, Flex Fuel Option, Power Outlet, 16 inch wheels, Seat Belts, Armrest, Auto Dimming Mirror, Transmission Cooler, Cargo Cover, Cargo Package, Driver Convenience Package, Floor Mats, Blue Tooth Communications, RADIO DATA SYSTEM, Spare Wheel, Suspension Package.

Offered for sale by Preferred Automotive in Fort Wayne, IN, (260) 489-0486. Vehicle information by Vast on 01/04/21.

The advertised price of $4,900 was adjusted to account for typical negotiation.

---

| | | | |
|---|---|---|---|
| 3 | 2004 Chevrolet Suburban K15 Z71 4WD 4D Wagon | 3GNFK16Z94G299643 | $5,078 |

Stock# A22982YT. 136056 Miles. 8 Cylinder 5.3 Engine, 4 Speed Automatic, Cargo Package, Z-71 Off-road Package, Z-71 Suspension, Anti-Lock Brakes, Automatic Dimming Mirror, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Bose Sound System, Bucket Seats, Cruise Control, Center & Rear Bench Seat, Center Console, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Driver Information Sys, Power Drivers Seat, Electronic Transfer Case, Fender Flares, Fog Lights, Garage Door Opener, Head Airbags, AM/FM In-dash CD Changer, Intermittent Wipers, Keyless Entry System, Limited Slp Differential, Lighted Entry System, Leather Steering Wheel, Leather Seats, Overhead Console, OnStar System, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Rear Entertainment Systm, Rear Heater, Rear Seat Audio Controls, Side Airbags, Skid Plates, Strg Wheel Radio Control, Tachometer, Tinted Glass, Camper/Towing Package, Trailer Hitch, Tubular Side Steps, Tilt Steering Wheel, Flex Fuel Option, 16 inch wheels, Seat Belts, Armrest, Auto Dimming Mirror, Transmission Cooler, Floor Mats, Blue Tooth Communications, Skid Plate, Spare Wheel, Suspension Package, Vehicle Tracking System, COMMAND System.

Offered for sale by McCluskey Chevrolet Kings Mall in Cincinnati, OH, (513) 373-4440. Vehicle information by Vast on 12/30/20.

The advertised price of $5,795 was adjusted to account for differences in vehicle description ($ -195) and typical negotiation.

---

| | | | |
|---|---|---|---|
| 4 | 2004 Chevrolet Suburban K15 LS 4WD 4D Wagon | 3GNFK16Z34G220662 | $4,008 |

Stock# SEC93705A. 279293 Miles. 8 Cylinder 5.3 Engine, 4 Speed Automatic, LS Package, Anti-Lock Brakes, Automatic Dimming Mirror, Auto Locking Hubs (4WD), Alarm System, Aluminum/Alloy Wheels, Cruise Control, Compact Disc W/Tape, Chrome Bumper(s), Center & Rear Bench Seat, Dual Airbags, Dual Air Conditioning, Rear Window Defroster, Heated Power Mirrors, Power Drivers Seat, Electronic Transfer Case, Fog Lights, Intermittent Wipers, Keyless Entry System, Lighted Entry System, Leather Steering Wheel, Overhead Console, Power Brakes, Power Door Locks, Privacy Glass, Power Steering, Power Windows, Roof/Luggage Rack, Rear Heater, Running Boards, Split Front Bench Seat, Tachometer, Tinted Glass, Tilt Steering Wheel, Velour/Cloth Seats, Off-Road Package.

Offered for sale by City Wide Auto Credit in Toledo, OH, (419) 698-5259. Vehicle information by *Leading Internet Auto Site on 02/15/21.

The advertised price of $4,164 was adjusted to account for differences in vehicle description ($260) and typical negotiation.

---

Ex. B at 5–6.

21. On information and belief, the "typical negotiation" deduction is a downward adjustment to advertised prices based on the *possibility* of haggling. Its use necessarily results in the insured receiving a lower payment for her vehicle.

22. Because State Farm applied the "typical negotiation" deduction to its valuation of Nichols's vehicle, it did not determine the value of her vehicle based on asking or sold prices; rather, it relied on speculation about the price comparable vehicles *might* sell for *if* someone were to negotiate a lower price than the owner requested, despite that State Farm has no apparent reason to believe that this comparable vehicle was ever available, or was ever sold, at that price.

23. The parties' insurance contract does not mention the typical negotiation deduction, let alone authorize it.

24. The typical negotiation deduction has no connection to the real world of the used car market. As a result of the competition spurred on by internet pricing and comparison shopping, used car dealers no longer routinely inflate prices above market value. By applying the typical negotiation deduction, State Farm therefore paid an artificially lower value for Nichols's claim.

25. Moreover, the typical negotiation deduction is arbitrary, including insofar as the valuation report does not supply any factual basis supporting the amount of the deduction or the decision to apply the deduction in the first place. *See* Ex. B.

26. Negotiation is more art than science. The result often depends on a myriad of factors, including the skill, personality, and goals of the respective parties. It is unclear which of those factors (if any) State Farm used to quantify the "typical" negotiation.

27. Because the typical negotiation deduction is inherently speculative, it is impossible for the insured to verify whether the deduction was for a "correct" amount.

28. For that matter, the report does not even itemize the deduction from the advertised price, so the insured can only determine how much was deducted from their vehicle valuation by calculating the difference between advertised price and the price bolded on the top-right corner of each comparable vehicle entry and dividing that figure by the total number of comparable vehicles.

29. Moreover, on information and belief, the typical negotiation deduction results in the use of purported values for the comparable vehicles, used in valuing the insureds' total loss vehicles, that are lower than what those advertised comparable vehicles actually sell for in real life.

30. For Nichols, the typical negotiation deduction reduced her ultimate payment from State Farm by $462.00.

31. The price for each of the four comparable vehicles reflected on Nichols's valuation report had a different typical negotiation deduction, but the report does not explain the basis for those differences, which further reinforces the arbitrariness of this bogus deduction.

32. The report ultimately valued Nichols's vehicle at $5,518.

33. State Farm subtracted Nichols's deductible from that figure and paid her $5,446.85.

34. If State Farm had not improperly applied a typical negotiation deduction to Nichols's claim, she would have been paid $5,908.85.

## CLASS ACTION ALLEGATIONS

35. Pursuant to FED. R. CIV. P. 23, Plaintiff seeks certification of a class defined as follows:

> All State Farm insureds (1) with Ohio first party personal line policies issued in Ohio, (2) who received compensation, within eight (8) years of the filing of this action, for the total loss of their own vehicles under their First Party (Comprehensive, Collision, and UMPD) coverages, and (3) whose claim was settled using the amount determined by a

total loss valuation from Audatex based on the value of comparable vehicles which took a deduction or adjustment for "typical negotiation."

36. Excluded from the Class are: (a) State Farm and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

37. The Class can be readily identified through records obtained from State Farm and/or Audatex related to the total loss claims of the proposed Class.

38. *Numerosity.* The Class is so numerous that individual joinder is impracticable. In 2019, State Farm had a 16.7% market share in Ohio, the largest in the state.[1] On information and belief, State Farm applies the "typical negotiation" deduction to most or all total loss claims in Ohio. The Class therefore contains at least thousands of members.

39. *Typicality.* Plaintiff's claims are typical of the Class she seeks to represent. Like all class members, State Farm applied a typical negotiation deduction to Plaintiff's total loss claim and thereby reduced her final payment. Plaintiff's claims arise out of the same conduct and are based on the same legal theories as those of the absent class members.

40. *Adequacy of Class Representative.* Plaintiff will fairly and adequately protect the interests of the Class. She is aware of her fiduciary duties to absent class members and is determined to faithfully discharge her responsibility. Plaintiff's interests are aligned with (and not antagonistic to) the interests of the Class.

---

[1] OHIO DEPT. INS., *2019 Property and Casualty Insurance Market Share Report* (July 28, 2020), insurance.ohio.gov/static/Company/Documents/2019+Market+Share+Report.pdf.

41. *Adequacy of Counsel.* In addition, Plaintiff has retained competent counsel with considerable experience in class action and other complex litigation. Plaintiff's counsel have done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

42. *Commonality and Predominance.* This case presents numerous questions of law and fact with answers common to the Class that predominate over questions affecting only individual class members. Those common questions include:

   a. Whether the parties' contract allowed State Farm to apply a typical negotiation deduction to total loss claims;
   b. Whether State Farm's use of a typical negotiation deduction complied with OHIO ADMIN. CODE § 3901-1-54;
   c. Whether State Farm's use of a typical negotiation deduction breached the implied covenant of good faith and fair dealing; and
   d. Whether Plaintiff and the Class are entitled to compensatory damages and/or equitable relief.

43. *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

## CAUSES OF ACTION

### Count 1: Breach of Contract

44. Plaintiff incorporates by reference all of the above allegations.

45. Plaintiff and the Class entered an insurance contract with State Farm.

46. Plaintiff and the Class have performed their duties under the contract in all material respects.

47. By applying the typical negotiation deduction to total loss claims filed by Plaintiff and the Class, State Farm breached its duties under the terms of the contract in at least three ways.

48. First, State Farm breached an express term of the contract. Under the express terms of the contract, State Farm had a duty to pay Plaintiff and the Class the "actual cash value" (minus any applicable deductible) of their vehicles that State Farm determined to be a total loss.

49. State Farm itself determined that Plaintiff and the Class had suffered a total loss of a covered vehicle.

50. When State Farm paid Plaintiff and the Class, however, it applied a deduction for "typical negotiation."

51. A typical negotiation deduction is not a legitimate component of actual cash value, including but not limited to because it is arbitrary, not based on objective or verifiable information, and has no basis in the realities of the marketplace.

52. State Farm therefore breached an express term of the contract.

53. Second, State Farm violated Ohio's regulation governing unfair claims settlement practices. *See* OHIO ADMIN. CODE § 3901-1-54.

54. The purpose of § 3901-1-54 "is to set forth uniform minimum standards for the investigation and disposition of property and casualty claims arising under insurance contracts or certificates issued to residents of Ohio." OHIO ADMIN. CODE §

3901-1-54(A). Thus, § 3901-1-54 is automatically incorporated into all Ohio insurance contracts, including those of Plaintiff and the Class with State Farm, as a "statutory floor." *McPheeters v. USAA*, No. 1:20-cv-414, 2021 U.S. Dist. LEXIS 129862, *19 (S.D. Ohio July 13, 2021) (quoting *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-cv-1147, 2020 U.S. Dist. LEXIS 5163, *8 (S.D. Ohio Jan. 13, 2020)).

55. Under § 3901-1-54, insurers providing a cash settlement for total loss claims "shall base the offer upon the actual cost to purchase a comparable automobile less any applicable deductible amount contained in the policy, and/or deduction for betterment as contained in paragraph (H)(2) of this rule." OHIO ADMIN. CODE § 3901-1-54(H)(7). If an insurer calculates actual cash value by looking to comparable motor vehicles, it must use prices that "are" available or "were" available to consumers within 90 days. *Id.* at (H)(7)(a)–(b).

56. The typical negotiation deduction relies on prices that were *never* available to consumers at *any* time. The valuations resulting from applying the typical negotiation deduction are not the actual cost to purchase a comparable vehicle.

57. Because State Farm did not base its offer on prices that "are available" (advertised prices) or "were available" (sale prices), it violated § 3901-1-54(H)(7)(a)–(b) and thereby breached its contract with Plaintiff and the Class.

58. Third, State Farm breached the implied covenant of good faith and fair dealing.

59. Under Ohio law, "[e]very contract, no less in insurance or consumer transactions, has an implied covenant of good faith and fair dealing to it." *Jokic v. State Auto. Mut. Ins. Co.*, 2005-Ohio-7044, 2005 Ohio App. LEXIS 6359, ¶ 34 (Dec. 29, 2005) (citation omitted), *appeal denied* 110 Ohio St. 3d 1438 (2006).

60. The implied covenant "is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could have not been

contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453, ¶ 42 (2018) (quotation omitted).

61. The term actual cash value is undefined in the parties' insurance contract, and its meaning was not resolved explicitly by the parties.

62. The parties' contract also does not mention or discuss the typical negotiation deduction.

63. State Farm thus had a duty to act reasonably and refrain from taking opportunistic advantage of Plaintiff and the Class when determining the actual cash value of their vehicles.

64. When determining the actual cash value of vehicles belonging to Plaintiff and the Class, State Farm took advantage of them and frustrated their reasonable expectations under the contract by applying a typical negotiation deduction that is arbitrary, not based on objective or verifiable information, and has no basis in industry customs or the realities of the marketplace.

65. State Farm therefore breached the implied covenant of good faith and fair dealing.

66. As a result of State Farm's breaches of contract, Plaintiff and the Class have suffered damages. The typical negotiation deduction necessarily reduced their final payments.

67. Therefore, State Farm is liable for breach of contract.

## Count 2: Unjust Enrichment
## (In the Alternative)

68. Plaintiff incorporates by reference all of the above allegations.

69. Plaintiff asserts this claim for unjust enrichment in alternative to her breach of contract claim.

70. State Farm profits from the typical negotiation deduction because it is able to retain more money.

71. By accepting a payment with that deduction, Plaintiff and the Class conferred a benefit upon State Farm.

72. Plaintiff and the Class could not have known they were conferring such a benefit on State Farm because the typical negotiation deduction was not itemized and its factual basis (if any) was not disclosed on their valuation reports.

73. State Farm was aware of that benefit.

74. It would unjust for State Farm retain that benefit.

75. Therefore, State Farm is liable to Plaintiff and the Class for unjust enrichment and must disgorge its ill-gotten gains.

## PRAYER FOR RELIEF

76. Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

   a. Certification of the proposed Class;
   b. Appointment of the undersigned counsel as class counsel;
   c. An order declaring that State Farm's use of a typical negotiation deduction is unlawful and enjoining State Farm from engaging in any further unlawful conduct;
   d. An award of all damages, including attorneys' fees and reimbursement of litigation expenses, recoverable under applicable law;
   e. Restitution or disgorgement of State Farm's ill-gotten gains; and
   f. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

77. Plaintiff demands a jury trial on all applicable claims.

Dated: Jan. 4, 2022                    Respectfully submitted,

By: */s/ Jared W. Connors*

MEYER WILSON CO., LPA
Matthew R. Wilson
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr.
Email: mboyle@meyerwilson.com
Jared W. Connors
Email: jconnors@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Roger Heller (pro hac vice application to be filed)
Jonathan Selbin (pro hac vice application to be filed)
Email: rheller@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

GEISER, BOWMAN & MCLAFFERTY, LLC
Sydney S. McLafferty
Email: smclafferty@protectingohio.com
495 S. High St., Suite 400
Columbus, Ohio 43215
Telephone: (614) 222-4444

*Attorneys for Plaintiff and the Proposed Class*