# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CARLLYNN NICHOLS,**
on behalf of herself and all others
similarly situated,

      **Plaintiff,**

v.

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,**

      **Defendant.**

:
:
:
:

**Case No. 2:22-cv-16**
**Judge Sarah D. Morrison**
**Magistrate Judge Elizabeth Preston Deavers**

## OPINION & ORDER

This matter is before the Court on several motions. First, Defendant State Farm filed a Motion to Dismiss or, in the alternative, to Compel Appraisal and Stay Proceedings[1] (ECF No. 17), to which Plaintiff Carllynn Nichols responded (ECF No. 25), and the University replied (ECF No. 26). Both parties have also filed Motions for Leave to File Supplemental Authority. (ECF Nos. 30, 32, 36, 38.) Neither party has opposed the motions for leave.

## I. BACKGROUND

All well-pleaded factual allegations in the Complaint (Am. Compl., ECF No. 26) are considered as true for purposes of the Motion to Dismiss. *See Gavitt v. Born*,

---

[1]Defendant has requested oral argument on this Motion. (ECF No. 17, PageID 261.) Because the Court does not believe additional argument would be helpful, that request is **DENIED**.

835 F.3d 623, 639–40 (6th Cir. 2016). The following summary draws from the allegations in the Complaint and the documents integral to and incorporated therein.

While covered under a State Farm auto policy, Nichols was involved in a car accident and filed a claim for loss. (*Id.*, ¶ 16.)) To settle her claim, State Farm could pay the cost to repair the vehicle, or it could pay the vehicle's pre-accident actual cash value, less any applicable deductible. (*Id.*, ¶ 12.) After determining the vehicle was a total loss, State Farm opted for the latter. (*Id.*, ¶¶ 17–18.)

State Farm determined the actual cash value based on the advertised price of four comparable vehicles less a "typical negotiation" deduction for a non-itemized sum. (*Id.*, ¶¶ 4, 20.) The typical negotiation deduction is a downward adjustment to account for consumer negotiations on the advertised price. (*Id.*, ¶ 21.) According to Nichols, the State Farm policy does not mention or authorize this practice for determining the actual cash value. (*Id.*, ¶ 23.)

Nichols alleges that State Farm's application of typical negotiation deductions uproots the actual cash value from market realities and, as a result, violates the actual and implied terms of the contract. (*Id.*, ¶¶ 20–34.) According to her, the typical negotiation deduction reduced the payment she was owed under the policy by $462.00. (*Id.*, ¶ 30.) She further alleges that the practice of using a typical negotiation deduction effects members of a class with the same State Farm auto policy. (*Id.*, ¶¶ 34–75.) She has filed this case as a purported class action bringing claims for breach of contract and unjust enrichment.

## II. JURISDICTION

The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which confers original jurisdiction over class actions with at least 100 members where the amount in controversy exceeds $5 million, and "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id.* §§ 1332(d)(2)(A), (d)(5)–(6). The claims of individual class members are aggregated to determine the amount in controversy. 28 U.S.C. § 1332(d)(6). Each of these requirements are satisfied. Nichols alleges the putative class exceeds 100 members, that aggregated claims of all members exceed $5 million, and simple diversity is met. (Compl., ¶¶ 5–6, 8.)[2]

## III. MOTIONS FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

As a threshold matter, State Farm has filed two motions for leave to file supplemental authority, *instanter*. (ECF Nos. 30, 32.) Nichols responded but did not oppose the request for leave. (ECF Nos. 31, 33.) State Farm's Motions for Leave are **GRANTED**.

Nichols has also filed two notices of supplemental authority (ECF Nos. 36, 38) and State Farm responded but did not oppose consideration of supplemental authority (ECF No. 37). To the extent Nichols requested leave to file supplemental authority, it is also **GRANTED**.

---

[2] Nichols also claims that the Court has jurisdiction under § 1332(a), but this is not the case. Unlike in subsection (d), subsection (a) does not provide for the aggregation of claims of multiple plaintiffs in determining the amount in controversy. Thus, her claim for $462.00 does not satisfy the amount in controversy requirement in excess of $75,000. 28 U.S.C. § 1332(a).

### IV. MOTION TO DISMISS

#### A. Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

4

**B. Applicable Law**

In a diversity action, the forum state's choice-of-law rules determine which state's substantive law will apply. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). Where, as here, " 'neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law.' " *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (quoting *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995)). Consequently, the Court applies the substantive law of Ohio.

In applying Ohio law, decisions by the Supreme Court of Ohio that have addressed the relevant issue are binding. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir.2000). If the issue has not been directly addressed, the court must "anticipate how the [the Supreme Court of Ohio] would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir.2005). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.*

**A. Law and Analysis**

    1.    <u>Breach of Contract—Count I</u>

To establish a claim for breach of contract, a plaintiff must allege: (1) a valid contract existed between the parties; (2) non-performance by the defendant; and (3) that damages resulted from the defendant's non-performance. *See Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 97 N.E.3d 458, 469 (2018). State

5

Farm argues Nichols has not sufficiently pleaded non-performance because there are no express or implied terms in the policy that prevent the use of typical negotiation deductions when determining actual cash value. Nichols alleges that State Farm failed to comply with its express obligation to pay actual cash value for her covered vehicle under the policy. (Compl., ¶ 48.)

"Under Ohio law, if a contract is clear and unambiguous, then its interpretation is a matter of law for the court." *Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 668 (6th Cir. 2021). However, if the court determines an insurance policy is ambiguous, "the policy is construed strictly against the insurer." *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) (citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 757 N.E.2d 329, 334 (2001)). In order to prevail on a motion to dismiss, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Andersen*, 757 N.E.2d at 332. At the pleading stage, an insured's claim will survive if they offer a reasonable interpretation of the policy's language and allege sufficient facts to demonstrate the insurer's noncompliance with that interpretation.

Courts routinely find that actual cash value is ambiguous when left undefined by a policy. *See, e.g., Desai v. GEICO Cas. Co.*, 478 F. Supp. 3d 609, 615 (N.D. Ohio 2020). Here, the policy provides no definition for actual cash value and its clear meaning cannot be derived from context—it is, therefore, ambiguous. So long as Nichols offers a reasonable interpretation and alleges sufficient facts to

6

demonstrate State Farm's noncompliance with that interpretation, she will prevail at this stage.

Nichols argues that actual cash value must be based in market realities, not on speculation or conjecture. This is a fair interpretation and is consistent with how the term is generally interpreted by courts in Ohio. Actual cash value can be defined as "either the market value at the time of the accident or the replacement cost of the vehicle minus depreciation." *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-114, 2020 WL 134169, at *3 (S.D. Ohio Jan. 13, 2020) (Marbley, C.J.); *see also Wilkerson*, 997 F.3d at 670 (noting that the Ohio Supreme Court has not identified a default definition for the term). When defined as market value, actual cash value means the "price that a seller is willing to accept, and a buyer is willing to pay on the open market in an arm's length transaction." *Id.* at 669. Because actual cash value is ambiguous under the policy and Nichols' interpretation is reasonable, the Court will construe the policy in her favor.

Here, Nichols alleges that State Farm's application of the typical negotiation deduction divorced the actual cash value from market realities. (Compl., ¶ 51.) She supports this by alleging that the State Farm has provided no factual basis for the deduction and there is no indication that the adjustments were made using objective evidence. (Compl., ¶ 25, 51.) Instead, she alleges that "[State Farm] relied on speculation about the price comparable vehicles might sell for." (Compl. ¶ 22.) Taking these allegations as true and applying her reasonable interpretation, Nichols has alleged sufficient facts to demonstrate State Farm's noncompliance

7

with the express terms of the policy.³ She has sufficiently pleaded a claim for breach of contract on Count I.

### 2. Unjust enrichment—Count II

Unjust enrichment operates in the absence of an express contract when a person "retains money which in justice and equity belong to another." *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 834 N.E.2d 791, 799 (2005). To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984)). In Ohio, knowingly retaining a deduction can constitute unjust enrichment. *Price v. Gulfport Energy Corp.*, No. 2:20-CV-01057, 2020 WL 5433683, at *4 (S.D. Ohio Sept. 10, 2020) (Marbley, C.J.) (collecting cases).

Nichols alleges that "by accepting payment with [the typical negotiation] deduction" she and the putative class members "conferred a benefit upon State Farm." (Compl., ¶ 71.) She alleges that "State Farm was aware of that benefit" and it would be unjust for State Farm to retain the benefit because she and the putative

---

³ To the extent Nichols bases her breach of contract claim on State Farm's alleged non-compliance with OHIO ADMIN. CODE § 3901-1-54(H)(7), it fails as a matter of law. The regulation does not impose mandatory requirements on insurers. *See id.* ("the settlement value may be derived from [the following methods].") (emphasis added); *see also* Desai, 478 F. Supp. 3d at 616 (holding the same).

8

class members "could not have known they were conferring such a benefit. . . [that] was not itemized and its factual basis (if any) was not disclosed on the valuation reports." (Compl., ¶ 72–74.) Nichols has sufficiently pleaded an unjust enrichment claim on Count II.

State Farm argues for a different result. Its primary contention is that a claim for unjust enrichment is not available to Nichols because there is no dispute as to the existence of an express contract between the parties. But this court has previously rejected similar arguments. *See, e.g., Highman v. Gulfport Energy Corp.*, No. 2:20-cv-1056, 2020 WL 6204344, at *2 (S.D. Ohio Oct. 22, 2020) (Morrison, J.). While it is true that a claim for unjust enrichment does not exist where there is an express contract, neither party is bound to their current position that the policy at issue was valid and enforceable. *Id.* At this stage, Nichols is allowed to plead mutually exclusive claims in the alternative. Fed. R. Civ. P. 8(d)(2)–(3).

    3.    <u>Defendant's remaining arguments fail.</u>
          i.    *Nichols' participation in the appraisal process was not a condition precedent to her suit.*

State Farm first argues that Nichols' participation in an optional appraisal process was a condition precedent to her suit. However, where a written request for an appraisal is made after the suit has commenced, it cannot serve as a condition precedent to suit. *See Fire Ass'n of Philadelphia v. Agresta*, 115 Ohio St. 426, 154 N.E. 723, 725 (1926). Until such a request is made, parties are presumed to prefer a resolution by the court. *Id.*

9

Here, State Farm did not send a written request to participate in the appraisal process until after the suit commenced. (State Farm's Appraisal Request, ECF No. 17-2, PageID 289.) Its untimely request for appraisal did not retroactively impose a condition precedent to Nichols filing suit.

      *ii.*   *The doctrine of first breach is not implicated here.*

State Farm next argues that by failing to participate in the appraisal process, Nichols is precluded from bringing suit under the doctrine of first breach. This argument has no merit. Even if Nichols' failure to participate constituted a material breach, such a breach could not have occurred until *after* State Farm assessed the actual cash value using typical negotiation deductions—which is the alleged breach at the foundation of Nichols' claim. *See, e.g.*, *Diebold Nixdorf Inc. v. QSI, Inc.*, No. 5:20-cv-1135, 2020 WL 6583090, at *2 (N.D. Ohio Nov. 9, 2020).

      *iii.*   *An appraisal is not necessary to establish Art. III standing.*

Finally, to the extent State Farm argues that the appraisal was necessary to establish Article III standing, that argument also fails. While an appraisal may have highlighted a weakness in the merits of her claim, State Farm's argument conflates the Article III standing requirement of injury-in-fact with an issue on the merits. Within the meaning of Article III, Nichols suffered a legal injury when she was denied the benefit of the bargain due to State Farm's alleged breach, which she has properly alleged without an appraisal. *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018); *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020). State Farm's final argument on the motion to dismiss fails.

Defendant's Motion to Dismiss is **DENIED**.

## V. MOTION TO COMPEL APRAISAL AND STAY PROCEEDINGS

If the Court denies its motion to dismiss, State Farm argues the Court should stay proceedings and compel Nichols to participate in an appraisal. It contends that an appraisal is necessary to resolve preliminary issues in the suit—namely, whether Nichols was deprived of the actual cash value of her vehicle.

The issue in this case is what the term "actual cash value" means under the policy. Determining the meaning of insurance policy terms is a question of law that cannot be resolved by submitting the dispute to an appraisal. *See, e.g.*, *Ostendorf*, 2020 WL 134169, at *4 (S.D. Ohio Jan. 13, 2020) (Marbley, C.J.). It is clear from State Farm's original assessment that it believes the term "actual cash value" properly includes a typical negotiation deduction. Nichols does not. A separate appraisal of the covered vehicle will not alter this dispute. Accordingly, Defendant's Motion to Compel Appraisal and Stay Proceedings is **DENIED**.

## VI. CONCLUSION

For the reasons stated herein, both parties' Motions for Leave to File Supplemental Authority (ECF Nos. 30, 32, 36, 38) are **GRANTED**. Defendant's Motion to Dismiss or to Compel Appraisal and Stay Proceedings (ECF No. 17) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**