**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CARLLYNN NICHOLS,**

**Plaintiff,** : **Case No. 2:22-cv-16**
**Chief Judge Sarah D. Morrison**
**v.** **Magistrate Judge S. Courter M. Shimeall**

**STATE FARM MUTUAL AUTOMOBILE INS. CO.,** :

**Defendant.**

## OPINION AND ORDER

Carllynn Nichols brought this putative class action to challenge the way that State Farm Mutual Automobile Insurance Company calculated and paid its insureds the "actual cash value" ("ACV") of destroyed vehicles. When an insured's vehicle was declared a total loss, State Farm paid its insured the destroyed car's ACV less any applicable deductible. To calculate that ACV during the relevant time period, State Farm used the Audatex "Autosource" valuation methodology, which used advertised prices for comparable vehicles, then imposed a "typical negotiation" adjustment that reduced the estimated value of the comparators to account for negotiations that would lower the final sales prices. Ms. Nichols claims that this "typical negotiation" adjustment undervalued the comparator vehicles and breached State Farm's contracts with its insureds.

This matter is now before the Court on Plaintiff's Motions for Class Certification (ECF No. 114) and to Exclude Philip M. Fernbach, Ph.D (ECF No. 144)

and Defendant's Motion to Exclude Jason Merritt (ECF No. 128). Those motions are fully briefed and ripe for decision.[1]

## I. BACKGROUND

Ms. Nichols had a car insurance policy issued by State Farm. State Farm used a form contract that stated that, in the event of a total loss of a covered car, it would "[p]ay the actual cash value of the covered [total loss] vehicle minus any applicable deductible." (Policy & Declarations, ECF No. 71–1, PAGEID # 1237.) "Actual cash value" is not defined in the policy. Rather, the Policy provides that the ACV will be determined by agreement of the parties or by appraisal: "The owner of the covered vehicle and [State Farm] must agree upon the actual cash value of the covered vehicle. If there is disagreement as to the actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal…" (*Id*. (emphasis omitted).)

State Farm contracted with third parties to perform valuations of its total loss claims in Ohio (State Farm Dep., ECF No. 114-7, 91:25–93:7); Ms. Nichols's claims address State Farm's use of Audatex. Audatex determined the ACV of an insured's lost vehicle by starting with the advertised sales prices of comparable vehicles in Audatex's database. Those advertised prices were then adjusted based on several factors, including distinctions between the comparators and the lost vehicle (such as condition and mileage differences), and applying a typical-

[1] Both parties have requested oral argument. Because the Court does not believe that oral argument is necessary, that request is **DENIED**.

negotiation discount.[2] The adjusted prices of the comparable vehicles were then averaged. From the average adjusted price, sales tax and any deductible were applied to arrive at State Farm's ACV for a lost vehicle.

State Farm uses the typical-negotiation deduction to reflect "the typical negotiation between an ask or advertised price and a sold price." (State Farm Dep., ECF No. 101-2 (sealed), 160:20–22). According to State Farm, the deduction reflects experience – "[e]xperience instructs that the price a used car dealer advertises for a car is just the starting point for bargaining, not the final price. That fact is reflected in the data: By analyzing millions of transactions over time, Audatex found that used cars typically sell for less than advertised." (ECF No. 136, PAGEID # 9611 (citing Graff Decl., ECF No. 136-1, ¶ 20).). According to Ms. Nichols, the deduction is "arbitrary, unsupported, and divorced from the realities of the marketplace[.]" (ECF No. 114, PAGEID # 7223.)

Once it had an ACV for a lost vehicle, State Farm would provide that figure to its insured. (Graff Dec. ¶¶ 12–13.) The insured then had three options: she could agree to that ACV, she could negotiate a new ACV, or she could demand an appraisal. (*Id.*, ¶ 27; ECF No. 71-1, PAGEID # 1237.) State Farm could also demand an appraisal if the parties did not agree on an ACV. (ECF No. 71-1, PAGEID # 1237.) If either side demanded an appraisal, each side selected an appraiser, and the two selected appraisers picked a third (or a court appointed one). (Graff Decl. ¶

[2] When the advertised prices of the comparators come from "no-haggle" dealerships for which the advertised price is the sale price, Audatex did not apply a typical negotiation adjustment. (Graff Decl. ¶ 22.)

5; ECF No. 71-1, PAGEID # 2371.) If two of the three appraisers agreed on a value, that value was binding on the parties. (*Id.*)

For Ms. Nichols, whose vehicle was declared a total loss following an accident, Audatex reached an ACV of $5,518 for her car. When she accepted that ACV, State Farm added taxes and subtracted Ms. Nichols's deductible before paying her $5,431.85. She then brought this case, claiming that State Farm's use of the typical-negotiation adjustment resulted in an underpayment to her of $512.78.[3] (ECF No. 114, PAGEID # 7228.)

Ms. Nichols now seeks certification of the following class of individuals:

> All State Farm insureds (1) with first party personal line policies issued in Ohio, (2) who received compensation, from January 4, 2021 through November 15, 2021, for the total loss of their own vehicles under their First Party (Comprehensive, Collision, and UMPD) coverages, and (3) whose claim was settled using the amount determined by an Audatex total loss valuation which included a TNA deduction.

(*Id.* at PAGEID # 7221.)

## II. MOTION FOR CLASS CERTIFICATION

### A. Standard of Review

Class certification is appropriate if the court finds, after conducting a "rigorous analysis," that the requirements of Rule 23 have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 250–51 (2011); *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 246 (6th Cir. 2024) (citing *Dukes*, at 351–52). As the Sixth Circuit

[3] After suit was filed, State Farm demanded an appraisal. After the appraisal process was complete, the binding appraisal award was $6,542. (Graff Decl. ¶¶ 35–39; Walker Appraisal Report/Award, ECF No. 136, PAGEID # 10082.) State Farm has paid Ms. Nichols the difference between its previous payment and the appraisal award. (Graff Decl. ¶ 39; ECF No. 136-9; ECF No. 136-10.)

has emphasized, plaintiffs seeking class certification "must 'affirmatively demonstrate' the four threshold imperatives of certification" in Rule 23(a): numerosity, commonality, typicality, and adequacy. *See In re Nissan*, 122 F.4th at 246 (quoting *Dukes*, 564 U.S. at 350). Plaintiffs must also show that the proposed class satisfies one of the types of class actions permitted under Rule 23(b): (1) actions where separate lawsuits would risk inconsistent verdicts or impede third-party interests; (2) actions where injunctive or declaratory relief is appropriate; or (3) actions where common questions predominate over issues affecting individual plaintiffs. *Id.* (citing Fed. R. Civ. P. 23(b)(1)–(3); *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011)).

In addition, although not expressly required by Rule 23, the proposed class must satisfy an implied ascertainability requirement, which requires the "class description [to be] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016); *see also Bowles v. Sabree*, 121 F.4th 539, 550 (6th Cir. 2024) ("Class actions come with an 'implied requirement' of ascertainability ('that the putative class members can be readily identified based on the class definition').") (quoting *Tarrify Props., LLC v. Cuyahoga Cty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022)).

Inquiry into the merits of the plaintiffs' claims at the class certification stage is limited: a court may consider merits questions "to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for

class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). But where appropriate, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982), and "rigorous analysis" may involve some overlap between the proof necessary for class certification and the proof required to establish the merits of the plaintiffs' underlying claims." *Dukes*, 564 U.S. at 350–51.

**B. Analysis**

The Sixth Circuit recently issued an *en banc* decision in *Clippinger v. State Farm Auto. Ins. Co.*, 173 F.4th 817 (6th Cir. 2026), which is on all fours with Ms. Nichols's Motion for Class Certification. In *Clippinger*, the Sixth Circuit concluded that claims like Ms. Nichols's cannot be pursued on a class-wide basis because, to determine whether State Farm paid the ACV for the lost vehicles owned by class members, a jury would have to consider unique evidence about each vehicle's value. *Id.* at 831–32. Specifically, the Sixth Circuit recognized that determining the ACV of each class member's vehicle would predominate over any common issues, and "a jury would have to identify this value for each class member before it could resolve the breach and damages elements of that member's claim." *Id.* at 832. This is because State Farm's policies "show[] that State Farm promised just one thing: to pay each class member the 'actual cash value' of the class member's totaled vehicle." *Id*. Nothing in the policy prevented State Farm from using a typical-negotiation adjustment, so the question of breach necessarily turned on "comparing what State Farm paid a class member to the fair market value of the class member's car." *Id.*

Such a "fact-intensive review" requires an individualized assessment of each class member's car, so a jury (or juries) would have to weigh "individual proof" on a "plaintiff-by-plaintiff" basis. *Id*. at 832–33. There is no way to determine whether each policyholder was paid less than "actual cash value" without individualized vehicle-by-vehicle evidence. *Id*. Accordingly, individual valuations "predominate" over all other questions under Federal Rule of Civil Procedure 23(b)(3), making class treatment inappropriate. *Id*.

Ms. Nichols makes three arguments to distinguish her case from *Clippinger*, primarily focusing on the fact that *Clippinger's* claims were brought under Tennessee law while her claims are brought under Ohio law. But the Court finds that *Clippinger's* analysis of Rule 23 of the Federal Rules of Civil Procedure applies with equal force to her claims and she cannot bring her claims as a class action. The Court will address each of Ms. Nichols's arguments in turn.

**1. *Clippinger* applies to Ms. Nichols's breach of contract claim brought under Ohio law.**

Ms. Nichols first argues that *Clippinger* is not applicable because her claims are brought under Ohio law. However, her attempts to distinguish Ohio contract law from Tennessee law are unavailing. As the Sixth Circuit has recognized, the overarching principles of insurance contract interpretation under Tennessee and Ohio law "are the same." *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 451 (6th Cir. 1999) (comparing *Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799–800 (terms in a contract are given their common and ordinary meaning; ambiguities are to be construed in favor of insured; and courts should give

effect to all words and phrases in a contract) and *ShoLodge, Inc. v. Travelers Indem. Co. of Illinois*, 163 F.3d 256, 259 (same) with *Gomoka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348–49 (1982) (same) and 57 Ohio Jur.3d §§ 274–292 (same)). Because Ms. Nichols has not argued that State Farm's insurance contracts in Tennessee are any different than its contracts in Ohio, the contracts will be interpreted the same under Ohio law as in *Clippinger*.

Even though both state laws interpret insurance contracts in the same manner, Ms. Nichols argues that, unlike under Tennessee law, State Farm is not entitled to an offset for any overestimations of ACV under Ohio law. (ECF No. 160, PAGEID # 11508.) But no Ohio court has found that such an offset is prohibited. Instead, Ms. Nichols cites three federal cases, none of which support her argument. First, she relies on *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 461 (6th Cir. 2020), but that case involved homeowner's insurance, was decided under Kentucky law, and involved the refunding of an illegal labor deduction from payments made to insureds. Second, she relies on *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020); while *Perry* was based on Ohio law, that case also involved homeowner's insurance and whether the term "depreciation" was ambiguous in the insurance policies or relevant Ohio Administrative Code provisions. Third, she relies on *Davis v. GEICO Cas. Co.*, 659 F. Supp. 3d 843, 855 (S.D. Ohio 2023) (Sargus, J.), but in that case, the value of the vehicle was irrelevant to any recovery by class members because the *Davis* plaintiffs sought recovery of certain taxes and fees that should have been paid as part of the "replacement cost" of lost vehicles.

But even if State Farm were not entitled to an offset for any overestimations of ACV under Ohio law, the result would be the same. The issue here, as in *Clippinger*, is that the individual valuations of each potential class members' lost cars predominate over all other questions. So even if there is no offset to consider, a jury must weigh plaintiff-by-plaintiff proof of each class member's car to determine whether each has been damaged.

Ms. Nichols's cannot certify a class on her breach of contract claim.

**2. Ms. Nichols cannot certify a claim for breach of the implied covenant of good faith and fair dealing.**

Ohio does not recognize a standalone cause of action for breach of implied covenant of good faith and fair dealing. *Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017) (collecting cases). Neither does Tennessee law. *Clippinger*, at 827–28. Ms. Nichols cannot certify a class asserting an independent Ohio law claim for breach of the implied covenant of good faith and fair dealing.

**3. Ms. Nichols cannot certify a claim for unjust enrichment.**

Ms. Nichols's unjust enrichment claim is not certifiable as a class action for the same reason that her contract claim is not certifiable: if State Farm paid the ACV (or more) to an insured, it is not unjust for State Farm to have retained the additional amount a plaintiff says it should have paid when that amount is not in fact owed. Determining the ACV of each class member's vehicle (and thus whether State Farm retained more than the policy allowed it to retain) would require an independent and individualized assessment as to each car, so individualized issues will predominate.

## III. MOTIONS TO EXCLUDE EXPERT TESTIMONY

During the briefing on the Motion for Class Certification, State Farm submitted a report from Philip M. Fernbach, Ph.D. in support of its opposition to the Motion. (ECF No. 136-16.) Ms. Nichols filed a Motion to Exclude Dr. Fernbach's testimony. (ECF No. 144.) Considering the Court's ruling above, the Motion to Exclude is **DENIED as moot**.

State Farm also moved to exclude Ms. Nichols's appraiser Jason Merritt as an expert witness in this case. (ECF No. 128.) Ms. Nichols submitted Mr. Merritt's expert report as part of her Motion for Class Certification to support the alleged impropriety of typical-negotiation adjustment deductions. (ECF No. 114, PAGEID ## 7223.) And Mr. Merritt provided his report specifically in connection with the class-certification issue. (Merritt Report, ECF No. 114-1, PAGEID # 7255.) Accordingly, State Farms's Motion to Exclude is **DENIED as moot**, **without prejudice**.

## IV. CONCLUSION

Plaintiff's Motion for Class Certification (ECF No. 114) is **DENIED**. Her Motion to Exclude Philip M. Fernbach, Ph.D. (ECF No. 144) is **DENIED as moot**. Defendant's Motion to Exclude Jason Merritt (ECF No. 128) is **DENIED as moot, without prejudice.**

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**